UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DUSTY ALANSON JAMES WING,

                            Plaintiff,

            v.

CORRECTION OFFICER MYERS, et al.,

                          Defendants.

No. 18-CV-11056 (KMK)

OPINION & ORDER

Appearances:

Dusty Alanson James Wing
Fallsburg, NY
*Pro se Plaintiff*

Jennifer Rose Gashi
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants Myers, Bowers, and DePaolo*

KENNETH M. KARAS, United States District Judge:

      Pro se Plaintiff Dusty Alanson James Wing ("Plaintiff") filed the instant Complaint ("Complaint"), pursuant to 42 U.S.C. § 1983, against Correction Officer Myers ("Myers"), Sergeant Ryan Bowers ("Bowers"), Sergeant Douglas DePaolo ("DePaolo"; with Myers and Bowers, "State Defendants"), inmate Brian Freeman ("Freeman"), and inmate DJ Frazier ("Frazier") (collectively, "Defendants"). (Compl. (Dkt. No. 2).)[1] Plaintiff alleges that Myers,

---

[1] "All at Woodbourne Correction Facility" is incorrectly identified as a Defendant on the docket. Although Plaintiff's Complaint includes "All at Woodbourne Correctional Facility" on the list of Defendants, (*see* Compl. 1), the Court interprets Plaintiff to mean that Myers, Bowers, DePaolo, Freeman, and Frazier are "[a]ll [located] at Woodbourne Correctional Facility." The Clerk of the Court is respectfully directed to terminate "All at Woodbourne Correction Facility" from the docket.

Freeman, and Frazier physically assaulted him while he was incarcerated at Woodbourne Correctional Facility ("Woodbourne"), and that DePaolo and Bowers failed to intervene in the assault. Construing the Complaint broadly, Plaintiff also alleges that State Defendants retaliated against him because of his criminal history.

Before the Court is State Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* State Defs.' Not. of Mot. ("Not. of Mot.") (Dkt. No. 26).) For the following reasons, State Defendants' Motion is denied, and the Court orders the Parties to conduct limited discovery on the question of administrative exhaustion. However, the Court dismisses Plaintiff's Complaint against Defendants Freeman and Frazier under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motion.

On October 18, 2018, Myers, Bowers, and DePaolo told inmates Freeman and Frazier about a crime of which Plaintiff was accused, "so [State Defendants] [could] watch while [Freeman and Frazier] beat [Plaintiff] up." (Compl. 3.) According to Plaintiff, after learning about the crime, Freeman "punched [him] in the face," and Frazier "punched [him] in the back and chest," while Myers, Bowers, and DePaolo watched. (*Id.*) Myers also attacked Plaintiff, "punch[ing] [him] in the mouth." (*Id.*)[2] The attack took place in the "bathroom in G-Y dorm," and Plaintiff does not recall any other witnesses. (*Id.*)

---

[2] Plaintiff first alleges that he was "assaulted by one officer, two inmates[,] and two sergeants, [Bowers] and [DePaolo]," who "beat [Plaintiff] up be because of a crime . . . [he was] accused of." (Compl. 3.) In the same paragraph, however, Plaintiff later specifies that he was

Plaintiff subsequently "went to [M]edical," where a nurse photographed his injuries. (*Id.*) As a result of the attacks, Plaintiff suffered from "a busted lip" and bruises on his back, chest, and the left side of his face. (*Id.*) According to Plaintiff, he told the medical counselors about the attack, but they "did not care." (*Id.* at 5.) Once the photographs of Plaintiff's injuries were taken, he was transferred to Sullivan Correctional Facility ("Sullivan"). (*Id*. at 3.)

It appears that Plaintiff did not file a grievance because he responded "no" to questions regarding whether he filed a grievance in the facility where his claims arose or in any other facility. (*Id.*) Plaintiff elaborates that he did not do so because he "was told that if he filed a grievance[,] [he] was going to get beat up again," and "[he] was scared." (*Id.* at 4.) Plaintiff also, however, responded to questions about where he filed a grievance and what happened when he did so, writing that he attempted to file a grievance "at the grievance office." (*Id.*) Plaintiff states both that "the grievance office [probably] threw [the grievance] out," and also more affirmatively, the "grievance guy threw out [his] grievance." (*Id.*)

B. Procedural Background

Plaintiff signed the Complaint against Myers, Bowers, DePaolo, Freeman, and Frazier on October 26, 2018. (*See* Compl. 7.) He was granted in forma pauperis status on December 12, 2018. (Dkt. No. 4.) With leave of the Court, State Defendants moved to dismiss Plaintiff's Complaint on May 10, 2019. (Not. of Mot.; State Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 27).) Plaintiff did not file an opposition. The Court deems the Motion fully submitted.

---

attacked by Freeman, Frazier, and Myers, and that Bowers, DePaolo, and Myers "watch[ed] while the two inmates beat [Plaintiff] up." (*Id.*)

3

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering State Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y.

Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B. Analysis

1. Applicable Law

State Defendants argue that Plaintiff's § 1983 claim is barred because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Defs.' Mem. 3–8.) "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement. Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations and quotation marks omitted).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conventionally, may not bring any action) absent exhaustion of available administrative

6

remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation omitted). This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2007), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly* . . . . Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules." *Williams*, 829 F.3d at 122 (emphasis in original) (citations, alterations, and quotation marks omitted).

"Prisoners in the custody of [DOCCS] must exhaust all levels of the Inmate Grievance Program ('IGP') process even if they do not receive a response from the Inmate Grievance Resolution Committee ('IGRC') or superintendent." *See Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017) ("The IGP provides a clear timeline for appealing grievances to the [Central Office Review Committee ('CORC')], which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent. [The] [p]laintiff therefore had an unimpeded path to the CORC, notwithstanding his claims that the . . . grievance clerk failed to process his complaint and that the . . . superintendent ignored his appeal." (citation omitted) (quoting *Dabney v. Pegano*, 604 F. App'x 1, 4–5 (2d Cir. 2015)). If a plaintiff does not receive a response from the IGRC, he normally must file an appeal with the prison superintendent and then with the CORC to fully exhaust his grievance. Indeed, the IGP explicitly states that "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2); *see also id.* § 701.8(g) (same for expedited harassment grievances).

However, the PLRA contains one "textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: an inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Available "grievance procedures . . . are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (citation and quotation marks omitted). In *Ross*, the Supreme Court provided "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* The Supreme Court explained that an administrative remedy is unavailable when:

> [(1)] it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;] . . .
> [(2)] an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it[;] . . . [or]
> [(3)] prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id*. at 1859–60 (citations omitted). The Second Circuit recently noted "that the three circumstances discussed in *Ross* do not appear to be exhaustive," but declined to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2.

A plaintiff need not plead that one of these three circumstances exists or that he did in fact exhaust his administrative remedies, because, as noted, the "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Id.* at 122. Defendants bear the burden of proving that Plaintiff failed to exhaust available administrative remedies. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specially

8

plead or demonstrate exhaustion in their complaints." (citation and quotation marks omitted)). Thus, as noted, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and quotation marks omitted).

### a. Exhaustion of Administrative Remedies

Plaintiff admits that he "did [not] file a grievance in the . . . correctional facility where [his] claim(s) arose" and "did [not] file a grievance . . . at any other . . . correctional facility." (Compl. 4.) As such, Plaintiff did not exhaust all steps of the grievance process. Plaintiff also alleges, however, that his grievance was "probably" thrown out, suggesting that he may have attempted to file at some point. (*Id.*) Even if Plaintiff did so, the IGP still requires Plaintiff to file a subsequent appeal with the prison superintendent or to the CORC, whether he received a response to his original grievance or not. *See Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) ("Prisoners in the custody of DOCCS must exhaust all levels of the [IGP] process[,] even if they do not receive a response from the [IGRC] or superintendent." (citing *Dabney*, 604 Fed. App'x at 4–5 ("The IGP provides a clear timeline for appealing grievances to the [CORC], which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent."))). Thus, Plaintiff's conclusory allegation does not excuse him from the exhaustion requirement. *Garcia v. Heath*, No. 12-CV-4695, 2013 WL 3237445, at *7 (S.D.N.Y. June 25, 2013) (finding the plaintiff's argument that his grievance was thrown away to be "merely conclusory," and stating "[w]hether [d]efendants ignored [p]laintiff's grievances, tore them up, or fed them to the dog is of no moment—none of these things 'prevented' [the] [p]laintiff from filing an appeal"); *see also Belile v. Griffin*, No. 11-CV-

92, 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013) ("[The] [p]laintiff's mere threadbare allegations that his grievances were . . . discarded . . . are insufficient to excuse his failure to comply with the IGP." (citations omitted)).

Additionally, when "the period between the date of the alleged incident and the filing of the complaint" indicates that an inmate could not have exhausted in that timeframe, courts have held that failure to exhaust is clear from the face of the complaint. *Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at *12 (S.D.N.Y. Sept. 26, 2019) (collecting cases). Such determinations are due to the timeline of the IGP framework. For example, an inmate has 21 days to file a grievance after an alleged incident occurs, and IGRC representatives have up to 16 days to resolve it, schedule a hearing, or make a recommendation to the superintendent. 7 N.Y.C.R.R. §§ 701.5(a)(1), (b)(1). Here, Plaintiff signed the Complaint, thus directing prison authorities to mail it to the Court's pro se office, 18 days after the alleged incident, on October 26, 2018. This is not enough time to have exhausted all levels of the IGP process. *See Perez v. City of New York*, No. 14-CV-7502, 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (dismissing for failure to exhaust when the plaintiff stated in his complaint that he had not appealed from the "first step of the IGRP's administrative procedure," and the plaintiff filed his complaint only one week after the incident occurred); *Pierre-Louis v. Martinez*, No. 12-CV-2240, 2014 WL 4161960, at *4 (E.D.N.Y. Aug. 19, 2014) (holding that "it [was] apparent from the face of the [c]omplaint" that plaintiff did not exhaust all administrative remedies because the complaint was filed "a mere three weeks after the alleged date of the incident"); *Price v. City of New York*, No. 11-CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (same); *see also Amaker v. Bradt*, 745 F. App'x 412, 413 (2d Cir. 2018) (holding that the plaintiff could not have exhausted when "he filed the complaint at issue [with the court] 11 days after filing the

grievance"). Whether Plaintiff filed a grievance or not, it is therefore "clear from the face of the [C]omplaint" that he failed to satisfy the PLRA's exhaustion requirement. *Lovick*, 2014 WL 3778184, at *4 (citation, alteration, and quotation marks omitted).

### b. Availability of Administrative Remedies

Although Plaintiff did not exhaust his administrative remedies, the Court cannot determine from the "face of the [C]omplaint," *id.*, whether these remedies were in fact available to Plaintiff. "As when non-exhaustion is not clear on the face of a complaint, dismissal is similarly inappropriate when one of the [] exceptions may well be applicable." *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *13 n.15 (S.D.N.Y. Mar. 31, 2016) (citation omitted). The circumstances surrounding whether Plaintiff filed a grievance and whether the grievance process was available to him are unclear. Plaintiff indicates that he did not file a grievance because he was threatened with attack if he did so. (Compl. 4.) He also, however, states that "the grievance office probably threw [] out" his grievance, and, more affirmatively, that "the grievance guy threw out [his] grievance." (*Id.*) Lastly, Plaintiff alleges that he was transferred to Sullivan soon after the incident. (*Id.* at 3.) It is therefore also unclear where Plaintiff was threatened and where he may have attempted to file a grievance.

State Defendants are correct that a "generalized fear of retaliation," (Defs.' Mem. 9), will not render administrative remedies unavailable. *See Little*, 2017 WL 1184326, at *12 (finding "allegations of generalized fear are insufficient to excuse [the plaintiff's] failure to exhaust (citations omitted)); *Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) (finding the plaintiff failed to allege any facts to support his claimed "[f]ear for [his] personal safety and retaliation by correctional staff"); *Harrison v. Stallone*, No. 06-CV-902, 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("[A] general fear of retaliation is ***not*** sufficient to excuse the

11

exhaustion requirement." (emphasis in original) (citation and quotation marks omitted)); *Hines v. Valhalla Cty. Corr.*, No. 01-CV-6935, 2002 WL 1822740, at *3 (S.D.N.Y. Aug. 8, 2002) ("If an inmate's allegation of a secondhand retaliatory threat was enough to allow the inmate to begin litigation without properly filing grievances, the PLRA's exhaustion requirement could be easily circumvented by all inmates. A general fear of retaliation is not an exception to the PLRA's exhaustion requirement." (footnote omitted)). Plaintiff, however, arguably raises more than a generalized fear of retaliation, suggesting that he was not only afraid, but also that he was specifically threatened with "get[ting] beat up again" if he filed a grievance. (Compl. 4.)

Administrative remedies may be deemed unavailable where "'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation,' including where 'officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.'" *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *7 (S.D.N.Y. Dec. 21, 2018) (citation and italics omitted) (quoting *Ross*, 136 S. Ct. at 1860). Plaintiff does suggest, even if barely, that he received a specific threat that appears to be related to the initial attack, as he was allegedly told that he would get beat up "again" if he filed a grievance. *Cf. Medina*, 2018 WL 797330, at *5 (determining that the threat alleged by the plaintiff was insufficient to render the grievance process unavailable because, inter alia, "there [was] no allegation that the threat was even related to her grievance"). Although a full record may show otherwise, it would be premature to dismiss the Complaint at this stage, when it is "possibl[e] [that] administrative remedies [were rendered] unavailable" to Plaintiff. *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *5 (S.D.N.Y. Dec. 21, 2016) (finding that when the plaintiff alleged that correction officers "must have been misplacing [his] mail," the court could not determine whether administrative remedies were

12

available to the plaintiff from the face of the complaint (alteration in original)); *see also Daly v. New York City*, No. 16-CV-6521, 2017 WL 2364360, at *3 (S.D.N.Y. May 30, 2017) (observing that "courts in [the Second] Circuit have denied motions to dismiss . . . even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure" (collecting cases)), *adopted by* 2017 WL 2963502 (S.D.N.Y. July 11, 2017); *Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (finding that although the "factual assertions" in the complaint did not, standing alone, "excuse[] the failure to exhaust," "the parties should have an opportunity to further develop the record," because "failure to exhaust is an affirmative defense that, given the [plaintiff's] pleadings [], is properly reserved for a motion for summary judgment"); *cf. Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016) (finding, at the summary judgment stage after a period of limited discovery on exhaustion, that the plaintiff insufficiently alleged the unavailability of administrative remedies because he "fail[ed] to specify the dates of any threats, the names of any officers who threatened him, and the locations in [the facility] where these alleged threats took place"). Particularly given that the Court "must liberally construe the pleadings of a pro se litigant," and that Plaintiff does not bear the burden of pleading exhaustion, the Court concludes that "there is ambiguity in the [Complaint] as to the circumstances surrounding failure to exhaust" and "agrees that it would be more prudent to rule on the exhaustion issue on a more fully-developed record." *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1285417, at *3 (S.D.N.Y. Mar. 28, 2013) (citation omitted).

Although courts may "frequently convert[] defendants' motions to dismiss to motions for summary judgment on the limited issue of administrative exhaustion," *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *5 (S.D.N.Y. Feb. 28, 2015) (collecting cases), it is also

13

imperative that "the [c]ourt must [] allow [the] [p]laintiff the opportunity to take discovery," *Shaw*, 2016 WL 7410722, at *5 (citation omitted). "Consequently, in order to facilitate the parties' abilities to offer evidence in the PLRA exhaustion context, courts typically have insisted upon limited discovery before converting a motion to dismiss for failure to exhaust administrative remedies into a motion for summary judgment." *Jones v. Sposato*, No. 16-CV-5121, 2017 WL 4023135, at *5 (E.D.N.Y. Aug. 22, 2017) (citation omitted).

Accordingly, the Court denies State Defendants' instant Motion but orders the Parties to conduct limited discovery solely on the issue of administrative exhaustion, to be completed within 60 days of the date of this Opinion. The Parties must focus on whether and when Plaintiff filed a grievance, the circumstances surrounding the alleged threat (including who made the threat, and when the threat might have been made), and whether administrative remedies were available to Plaintiff, both at Woodbourne and Sullivan.

### 2. Inmate Defendants

Defendants Freeman and Frazier are both inmates at Woodbourne. Although Plaintiff alleges that Freeman and Frazier physically assaulted him and were involved in the attack, the Court must dismiss Plaintiff's claims pertaining to these inmates.

A district court shall dismiss an in forma pauperis action "at any time" where it determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Here, Plaintiff's Action fails to state a claim against Freeman and Frazier.

In order to bring an action under § 1983, "the conduct complained of must have been committed by a person acting under color of state law," and "must have deprived a person of

14

rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Freeman and Frazier are inmates, and not state actors. As such, Plaintiff cannot reach their conduct in this lawsuit. *See Wright v. Stallone*, No. 17-CV-487, 2018 WL 671256, at *8 n.8 (N.D.N.Y. Jan. 31, 2018) (dismissing claims against three inmates who "are not state actors" in a § 1983 suit (citation omitted)); *Lewis v. Doe*, No. 13-CV-3190, 2013 WL 5923723, at *1 (E.D.N.Y. Oct. 31, 2013) (dismissing the plaintiff's § 1983 claims against "another inmate, who is not a state actor"); *see generally Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (citation and quotation marks omitted)). Thus, the Court dismisses Plaintiff's claims against Defendants Freeman and Frazier under 28 U.S.C. § 1915(e)(2)(B).

## III. Conclusion

For the foregoing reasons, State Defendants' Motion To Dismiss is denied. The Court orders the Parties to conduct limited discovery on the question of administrative exhaustion, to be completed within 60 days of the date of this Opinion. However, the Court dismisses with prejudice Plaintiff's claims against Defendant Brian Freeman and Defendant DJ Frazier under 28 U.S.C. § 1915(e)(2)(B). Finally, the Court denies IFP status for appeal of this dismissal, as any appeal would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to terminate the pending motion, (Dkt. No. 26), terminate Defendant Brian Freeman and Defendant DJ Frazier from the docket, and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: December 11, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE