UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DUSTY ALANSON JAMES WING,

               Plaintiff,

-against-

CORRECTION OFFICER MYERS, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

18-CV-11056 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Dusty Alanson James Wing ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, alleges that on October 8, 2018, while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Woodbourne Correctional Facility in Woodbourne, New York ("Woodbourne"), he was attacked by Correction Officer Myers ("Myers") and two inmates while Sergeant Ryan Bowers ("Bowers") and Sergeant Douglas DePaolo ("DePaolo," and the three DOCCS employees collectively, "Defendants") looked on. (*See* Doc. 2, "Compl." at 3).[1]

    On December 11, 2019, Judge Karas—before whom this matter proceeded before it was transferred to this Court on April 16, 2020—issued an Opinion & Order denying Defendants' motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(6). (Doc. 28, "Prior Ord.").[2] Defendants argued in support of that motion that dismissal was proper because Plaintiff failed to exhaust his administrative remedies. (*See* Doc. 27 at 3-10). Judge Karas, in denying Defendants' motion, reasoned that although it was clear from the face of the Complaint that

---

[1] Citations to Plaintiff's filings correspond to the pagination generated by ECF.

[2] Notwithstanding the fact that this prior decision is available on commercial databases, *see Wing v. Myers*, No. 18-CV-11056, 2019 WL 6732967 (S.D.N.Y. Dec. 11, 2019), any citations thereto correspond to the copy filed on the docket.

Plaintiff did not exhaust his administrative remedies, it was unclear whether the grievance process was available to him. (Prior Ord. at 9-14). Judge Karas, accordingly, directed that the parties:

> conduct limited discovery solely on the issue of administrative exhaustion, to be completed within 60 days of the date of this Opinion. The Parties must focus on whether and when Plaintiff filed a grievance, the circumstances surrounding the alleged threat (including who made the threat, and when the threat might have been made), and whether administrative remedies were available to Plaintiff, both at Woodbourne and Sullivan.

(*Id*. at 14).[3] The parties engaged in discovery and, on May 5, 2020, the Court granted Defendants permission to move for summary judgment on the limited issue of administrative exhaustion in accordance with the following briefing schedule: (1) moving papers were to be served by July 9, 2020; (2) opposition papers were to be served by August 10, 2020; and (3) reply papers, if any, were to be served on August 24, 2020. (Doc. 33). On July 7, 2020, the Court extended the briefing schedule, on Defendants' request, as follows: (1) moving papers were to be served on August 14, 2020; (2) opposition papers were to be served by September 15, 2020; and (3) reply papers, if any, were to be served by September 29, 2020. (Doc. 35).

Defendants filed their motion papers on August 14, 2020, in compliance with the operative briefing schedule. (*See* Doc. 36; Doc. 37; Doc. 38; Doc. 39; Doc. 40; Doc. 41; Doc. 42). No opposition papers were filed. On March 26, 2021, because "Defendants failed to file an affidavit of service reflecting how and when they served Plaintiff with their motion papers," the Court denied the motion without prejudice to re-filing. (Doc. 43). On April 9, 2021, the Court set a new briefing schedule for Defendants to re-file the extant motion. (Doc. 49). Under that schedule: (1) moving papers were to be served by April 12, 2021; (2) opposition papers were to be served by May 12, 2021; and (3) reply papers, if any, were to be served by May 19, 2021. (*Id.*).

---

[3] Judge Karas also *sua sponte* dismissed the two inmates whom Plaintiff claimed participated in the attack under 28 U.S.C. § 1915(e)(2)(B). (Prior Ord. at 14-15).

Defendants re-filed their motion papers on April 12, 2021. (*See* Doc. 50; Doc. 51; Doc. 52, "Def. 56.1 Stmt."; Doc. 53, "Duncan Decl."; Doc. 54, "Proscia Decl."; Doc. 55, "Def. Br."; Doc. 56). On January 19, 2022, the Court—having received no opposition papers from Plaintiff more than eight months after the deadline—*sua sponte* extended Plaintiff's time to oppose the motion to February 4, 2022 (and, correspondingly, extended Defendants' time to "file a reply, if any," to February 14, 2022). (Doc. 60). Plaintiff filed a two-page letter, which the Court construes as his opposition, on February 1, 2022. (Doc. 61, "Opp."). Defendants did not file a reply brief or request an extension of time within which to do so; the motion is, therefore, deemed fully submitted.

For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The Court draws the facts from the Complaint, Defendants' Rule 56.1 Statement, the Declaration of Jennifer Gashi (Doc. 39, "Gashi Decl.")[4] together with the exhibits annexed thereto, as well as the Declarations of Peter B. Duncan and Corey Proscia.[5]

---

[4] Although this document was not re-filed with the rest of the motion, it was re-served on Plaintiff on April 12, 2021. (Doc. 56). The Court, therefore, cites the copy filed initially on August 14, 2020.

[5] Local Civil Rule 56.1(b) requires that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civil Rule 56.1(c) warns, by extension, that each paragraph "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *See also Boatright v. U.S. Bancorp*, No. 20-4236-CV, 2022 WL 351059, at *1 (2d Cir. Feb. 7, 2022). Defendants, along with their motion papers, served and filed a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment Pursuant to Local Rule 56.2," which noted that Plaintiff's opposition must comply with, *inter alia*, Local Civil Rule 56.1. (Doc. 51). "Under these circumstances, we could rely on plaintiff's failure to file an opposition to defendants' Rule 56.1 Statement and deem every fact in the Rule 56.1 Statement admitted. Nonetheless, in deference to plaintiff's *pro se* status, as relevant, we will utilize certain citations in plaintiff's opposition brief and evidence in his exhibits. Where the Court relies on facts drawn from defendants' Rule 56.1 statement, 'it has done so because [plaintiff] has not disputed those facts or has not done so with citations to admissible evidence.'" *Ewers v. City of New York*, No. 17-CV-01116, 2021 WL 2188128, at *4 (S.D.N.Y. May 28, 2021) (quoting *Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-01877, 2010 WL 1047622, at *1 n.3 (S.D.N.Y. Mar. 19, 2010) (alteration in original)).

Plaintiff alleges that on October 8, 2018, while incarcerated at Woodbourne, he was attacked by two inmates and Myers while Bowers and DePaolo watched. (Def. 56.1 Stmt. ¶¶ 2, 5; *see also* Compl. at 1-4). Approximately ten days later, on or about October 18, 2018, Plaintiff was transferred to Sullivan Correctional Facility in Fallsburg, New York ("Sullivan"). (Def. 56.1 Stmt. ¶ 6; *see also* Gashi Decl. Ex. B at 26:22-27:16).

Plaintiff, upon arrival at both Woodbourne and Sullivan, received manuals outlining the grievance process at each facility. (Def. 56.1 Stmt. ¶¶ 3-4, 7-8; *see also* Gashi Decl. Ex. B at 17:13-18:12). Plaintiff admits that he never filed a grievance about the October 8, 2018 incident. (Def. 56.1 Stmt. ¶¶ 9-11; *see also* Gashi Decl. Ex. B at 21:9-16, 39:6-12; Duncan Decl. ¶¶ 4-6; Proscia Decl. ¶¶ 4-6).

The specific reason why Plaintiff did not file a grievance, though, is a moving target.

Plaintiff, in his initial narrative, pled that "the grievance officer probably threw [the grievance] out." (Compl. at 4). Plaintiff testified, however, that he meant to say that *if* he had filed a grievance, it *would* have been thrown out. (Gashi Decl. Ex. B at 31:20-32:8).

Then, during his deposition, Plaintiff blamed his inability to file a grievance on an individual referred to only as "Reid." (*See id*. at 21:17-24:22, 25:14-24). Plaintiff testified that he "asked to file a grievance, to see the grievance guy to do it." (*Id*. at 21:25-22:2). The "grievance guy," Reid, visited Plaintiff at Woodbourne on the day Plaintiff was being transferred to Sullivan, told Plaintiff he would "come back after [Plaintiff] signed the grievance . . . and help [Plaintiff] do the grievance." (*Id*. at 23:16-19). Reid did not return before Plaintiff was transferred. (*See id*. a 23:19-20, 24:6-17). On this theory, Plaintiff testified as follows:

> Q. So you didn't have a chance to do your grievance while you were at Woodbourne?
>
> A. No.

4

> Q. That's the reason why you didn't; because you didn't have the time?
>
> A. It's not that I didn't have the time. It's because the guy never came to see me. I was on keep lock. How am I supposed to see somebody? I can't just go . . . to his office if I'm on keep lock.

(*Id*. at 25:14-24).

Plaintiff continued, however, that on or about the day he arrived at Sullivan, he told an unnamed woman that he was unable to file a grievance before leaving Woodbourne. (*Id*. at 27:17-25). Plaintiff explained to this woman what happened and she offered to help him with the grievance process. (*Id*. at 28:2-15). Plaintiff had at that point—at the very least—begun drafting the Complaint. (*Id*. at 28:16-29:5).[6] Plaintiff went on to explain that, notwithstanding this woman's offer to assist him, he did not believe he could file a grievance about an interaction at Woodbourne while incarcerated at Sullivan because "they" told him he could not do so. (*Id*. at 29:6-30:6). At this juncture, Plaintiff offered a different reason as to why he was unable to file a grievance:

> Q. So you're saying the reason why you didn't file a grievance is because you were unaware that you could file a grievance at Sullivan about what happened at Woodbourne?
>
> A. Yes, ma'am.
>
> Q. Is that the only reason why you didn't file a grievance?
>
> A. Yes, ma'am.

(*Id*. at 30:7-15).

Plaintiff pled also that he was "told that if [he] filed a grievance [he] was going to get beat up again[,] so [he] was scared to file a grievance." (Compl. at 4). The basis for this belief, according

---

[6] The chronology is unclear. Plaintiff testified that this woman spoke with him around the time he was transferred to Sullivan (i.e., October 18, 2018), and that he had "already sent" his Complaint out when he spoke with her. (Gashi Decl. Ex. B at 27:17-29:5). Plaintiff was transferred to Sullivan on October 18, 2018, signed the Complaint on October 26, 2018, and mailed the Complaint to the Court on or about November 19, 2018. (*Id*.; Compl. at 7-8).

to Plaintiff, is because it is common knowledge that "if you write up an officer, they're going to come after you. It automatically happens. I know it's going to happen." (Gashi Decl. Ex. B at 33:8-11). Indeed, Plaintiff testified that unnamed inmates at Sullivan told him not to file a grievance "[b]ecause they didn't want to see nothing happen to" him. (*Id*. at 36:18-19). Additionally, the day Plaintiff left Woodbourne, Myers told him, "[W]e know where you're going. We have friends in Sullivan. If anything happens, we're coming for you." (*Id*. at 33:19-22). Plaintiff, consequently, offered a separate basis for being unable to file a grievance:

> Q. During that month and half [between the incident and filing this action], did you ever go to the grievance office at Sullivan to try to file a grievance?
>
> A. No.
>
> Q. And you never filed anything at Woodbourne either; correct?
>
> A. No.
>
> Q. And the reason for that was that an inmate told [you that] it was not a good idea for your safety?
>
> A. Yeah.
>
> Q. And the other reason was that you didn't think you could do it?
>
> A. No. It was because [of] my safety. And if I did it, I know what would happen.

(*Id*. at 39:6-20). Plaintiff complained further that he was unable to file a grievance because it took "too long to go to the law library" and get a proper grievance form. (*Id*. at 40:7-16). Plaintiff acknowledged that a grievance could be written on any piece of paper, but insisted that, if he used a regular piece of paper "they" would "send it back and say you have to have it on the grievance form." (*Id*. at 40:17-21).

6

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come

forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

The Court is, of course, mindful that "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does

not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).[7]

## ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); and it is "'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). "Moreover, the PLRA 'requires proper

---

[7] The Court, as noted previously, construes the letter filed on February 1, 2022 as Plaintiff's opposition. But, even if Plaintiff did not file a response to the pending motion, adjudication would be proper. As explained by the Second Circuit, "when a party, whether *pro se* or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment. Rather, it must examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014); *see also Vermont Teddy Bear Co.*, 373 F.3d at 244 ("[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." (internal quotation marks omitted)).

exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

Generally, as an inmate in DOCCS' custody, Plaintiff was required to follow a three-step process to exhaust the grievance process completely. *Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members, within twenty-one calendar days of the incident in question. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4, 701.5(a)-(b); (*see also* Duncan Decl. ¶ 3; Proscia Decl. ¶ 3). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the facility's superintendent within seven calendar days of receiving the IGRC's determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(c)(1). Finally, if the superintendent's conclusion is unfavorable, the inmate may appeal that decision to the Central Office Review Committee within seven calendar days of receiving the superintendent's determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(1)(i).

The Supreme Court has, however, acknowledged that there are specific situations in which an inmate is absolved from exhausting his administrative remedies—namely, when they are "unavailable" to him. *Ross*, 136 S. Ct. at 1859-60. An administrative remedy is considered unavailable in three situations: (1) when the remedy "operates as a simple dead end—with officers

unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S. Ct. at 1859-60). "The burden of proving that the grievance procedure is unavailable rests with the plaintiff." *Gayles v. Armor Corr. Health Servs.*, No. 16-CV-01356, 2018 WL 4327924, at *4 (E.D.N.Y. Aug. 15, 2018), *adopted by* 2018 WL 4326932 (E.D.N.Y. Sept. 7, 2018).

The analysis of the first issue—that is, whether Plaintiff exhausted his administrative remedies—is simple: the record after discovery confirms that Plaintiff never filed any grievance about the alleged October 8, 2018 attack. (*See* Def. 56.1 Stmt. ¶¶ 9-11; Gashi Decl. Ex. B at 21:9-16, 30:4-15, 31:20-32:8, 36:15-19, 39:6-16, 40:13-41:7; Duncan Decl. ¶¶ 4-6; Proscia Decl. ¶¶ 4-6). There is absolutely no doubt as to this fact.

The analysis of the second issue—the availability of the grievance process—is likewise simple, albeit more varied. First, in its entirety, Plaintiff offered conflicting testimony as to why he did not file a grievance: it was only because Reid never came back to help him; it was only because he did not know he could file grievances at Sullivan about events at Woodbourne; it was only because he feared retaliation; and it was only because he could not get access to proper forms. (*See* Gashi Decl. Ex. B at 25:14-24, 30:7-15, 39:6-20, 40:7-21). Such divergent and conflicting explanations cannot defeat a motion for summary judgment. *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (affirming grant of summary judgment where "the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and "even after drawing all inferences . . . most favorable

to the plaintiff, determined that no reasonable person could believe" the testimony (internal quotation marks omitted)); *Jhagroo v. Brown*, No. 16-CV-03426, 2020 WL 419450, at *5 (S.D.N.Y. Jan. 27, 2020) (explaining that "courts in this circuit apply *Jeffreys* at summary judgment to dismiss claims that are uncorroborated and contradictory"); *Gibson v. Brooks*, 335 F. Supp. 2d 325, 328 (D. Conn. 2004) ("A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.").

Even if the Court did not conclude that Plaintiff's testimony was self-serving, contradictory, incomplete, and wholly inadequate to raise a genuine issue of material fact in light of Defendants' showing, the motion would still be granted because nothing Plaintiff underscored in his testimony suggests—notwithstanding his attempt to show unavailability by "machination, misrepresentation, or intimidation"—that the grievance process was unavailable to him.

Turning first to Reid's failure to follow up with Plaintiff at Woodbourne before the transfer to Sullivan, that theory of unavailability is blocked by at least two hurdles. First, it is unclear that Reid was a DOCCS employee and exhaustion is excused only when access to the process is hindered by "prison administrators." *Williams*, 829 F.3d at 124 (internal quotation marks omitted). Second, even if Reid was a DOCCS employee, the interaction described by Plaintiff does not suggest that Reid intimidated or misled Plaintiff in any way; in fact, Plaintiff knew, upon arrival at Sullivan—with approximately eleven calendar days left to engage the first step of the grievance process—that he had not filed a grievance. (*See* Gashi Decl. Ex. B at 21:25-29:10). Plaintiff's decision not to diligently pursue a grievance will not prevent Defendants from shielding themselves with his failure to exhaust his administrative remedies. *See Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) ("[T]o the extent he was misled, Riles learned that the requested remedy was not being offered by March 23, affording him nine days to timely file . . . .

12

Administrative procedures were, therefore, still available to him."); *Miller v. Annucci*, No. 17-CV-04698, 2021 WL 4392305, at *15 (S.D.N.Y. Sept. 24, 2021) ("No evidence suggests that 'officials misled or threatened [Plaintiff] so as to prevent [his] use of otherwise proper procedures.'" (quoting *Ross* 136 S. Ct. at 1860 (alterations in original))); *Demuth v. Miles*, No. 18-CV-00813, 2020 WL 1893574, at *6 (N.D.N.Y. Jan. 21, 2020), *adopted by* 2020 WL 728324 (N.D.N.Y. Feb. 13, 2020); *Lev v. Lewin*, No. 19-CV-00061, 2020 WL 95432, at *4 (N.D.N.Y. Jan. 8, 2020) ("Plaintiff has presented no evidence that he was misled by the handbook he received or by prison officials regarding administrative remedies or the grievance process."), *aff'd sub nom. Lev v. Thoms*, 853 F. App'x 767 (2d Cir. 2021); *Smith v. City of New York*, No. 12-CV-03303, 2013 WL 5434144, at *24 (S.D.N.Y. Sept. 26, 2013).

As for the theories of unavailability based on the fact that Plaintiff did not know he could grieve events from another facility (and "they" told him that he could not do so) and that he lacked proper forms, these arguments simply fail. *See, e.g.*, *Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017) ("Whether or not the standard inmate grievance form was available . . . New York regulations expressly allow for grievances to be submitted 'on plain paper' when the grievance form is not readily available." (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1)); *Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at *7 (S.D.N.Y. Sept. 23, 2020) (offering only "the conclusory claim that an unidentified official misled" the plaintiff is insufficient on summary judgment); *Gottesfeld*, 2020 WL 1082590, at *8 ("[D]enial of grievance forms does not, in itself, make administrative remedies unavailable." (internal quotation marks omitted)); *Kendall v. Cuomo*, No. 12-CV-03438, 2017 WL 4162338, at *5 (S.D.N.Y. Sept. 19, 2017) ("[I]gnorance . . . does not change the fact that those remedies were, nevertheless, available."); *Smith*, 2013 WL 5434144, at *25 ("[I]gnorance is not an excuse where he had access to materials

to learn about the grievance procedure, he was not incorrectly instructed about the grievance procedure, and prison officials did not do anything that objectively prevented him from availing himself of that procedure."); N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1) ("The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility.").

Finally, with respect to Plaintiff's theory of unavailability based on fear of retaliation, that premise fails because Plaintiff's explanations about the origins of that fear lack specificity. *See Singh v. Lynch*, 460 F. App'x 45, 48 (2d Cir. 2012) ("As for the alleged inmate warnings, in the absence of any particulars . . . this fact cannot support a finding that grievance procedures . . . were effectively unavailable."); *Brown v. Phipps*, No. 19-CV-04356, 2021 WL 3604664, at *5 (S.D.N.Y. Aug. 12, 2021) (noting that "unsupported statements" are insufficient to defeat motion for summary judgment on administrative exhaustion); *Rodriguez v. Landry*, No. 20-CV-00556, 2020 WL 6747806, at *6 (N.D.N.Y. Oct. 26, 2020) ("[A] generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies under *Ross*."), *adopted by* 2020 WL 6743077 (N.D.N.Y. Nov. 17, 2020); *DeLee v. Russo*, No. 17-CV-00448, 2019 WL 3945657, at *4 (W.D.N.Y. Aug. 21, 2019) (finding no "merit to Plaintiff's vague assertion that he was unable to follow the procedures out of fear for his safety or confusion as to how to properly exhaust"), *adopted by* 2019 WL 5287929 (W.D.N.Y. Oct. 18, 2019); *Medina v. Kaplan*, No. 16-CV-07223, 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) ("There is no allegation that the threat was even related to her grievance and ability to exhaust available administrative relief."); *Judge v. Gibson*, No. 13-CV-00727, 2015 WL 926388, at *6-7 (N.D.N.Y. Mar. 4, 2015) (concluding that vague conclusions of being "in fear" are insufficient to show unavailability on summary judgment); *cf. Santos v. Schroeder*, No. 19-CV-01610, 2021 WL 931959, at *8-9 (N.D.N.Y. Feb.

1, 2021) (denying summary judgment, where "[a]lthough thin," the plaintiff claimed that a defendant told him that if he "value[d] his life," he would not file a grievance).

In short, discovery has revealed that there is no genuine issue of material fact that: (1) Plaintiff did not exhaust his administrative remedies prior to filing this action; and (2) the grievance process was available for him to utilize.

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is GRANTED. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 50, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

SO ORDERED:

Dated: White Plains, New York
February 18, 2022

PHILIP M. HALPERN
United States District Judge